UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LANDES CAPITAL MANAGEMENT, LLC., | ) | CASE NO.1:19CV902 |
| | ) | |
| Plaintiff, | ) | SENIOR JUDGE |
| | ) | CHRISTOPHER A. BOYKO |
| vs. | ) | |
| | ) | |
| HJT HOLDINGS, LLC., | ) | OPINION AND ORDER |
| | ) | |
| Defendant. | ) | |

**CHRISTOPHER A. BOYKO, SR. J:**

This matter is before the Court on Defendant HJT Holdings, LLC's Motion for Summary Judgment. (ECF # 15). Upon review, the Court grants HJT's Motion on Landes's Unjust Enrichment/Quantum Meruit and Fraud claims and denies HJT's Motion on Landes's Breach of Contract claim.

According to its Complaint, Landes Capital Management, LLC. ("Landes") obtains negotiable letters of credit for customers from banks. These letters of credit provide guarantees that payments will be on time and for the correct amount.

On November 6, 2018, Landes alleges it entered into a written contract with Defendant HJT Holdings, LLC. ("HJT"), wherein Landes would obtain a Documentary Letter

of Credit ("DLC") in the amount of $7,000,000 for HJT in return for a 7% commission. HJT needed the funds to facilitate a charitable purchase of oil from a Russian company for delivery to the nation of Ghana. As part of the contract, HJT agreed to deposit 2% of the commission payment into an escrow account prior to Landes securing the DLC.

Landes alleges it delivered the DLC to HJT on December 3, 2018 via the Society of Worldwide Interbank Financial Telecommunications System ("SWIFT") and on December 6, 2018, Landes invoiced HJT for the remaining five percent commission.

However, due to circumstances outside Landes's control, the underlying transaction fell through. As a result, HJT has refused to pay the remaining commission. Landes brings this suit for Breach of Contract, Quantum Meruit/Unjust Enrichment and Fraud, alleging it performed under the parties' contract all its obligations but HJT has failed to pay the contract price.

HJT has Counterclaimed for Breach of Contract, Negligent Misrepresentation and Unjust Enrichment, alleging Landes was supposed to secure a DLC from a top tier bank by November 14, 2018, but failed to timely deliver the DLC. When it did deliver a purported DLC, it was rejected by the recipient bank as noncompliant and possibly fraudulent, resulting in HJT losing the underlying transaction and a deposit it made to secure the underlying transaction.

**HJT Motion For Summary Judgment**

HJT argues it is entitled to summary judgment on Landes's claims because Landes has not produced any enforceable written agreement. The Agreement for Financial Services that Landes attaches to its Complaint is unsigned, was never provided to HJT or its principal,

Jerome Thomas, and was never agreed upon.

According to the affidavit of Jerome Thomas, he was semi-retired from the fast food and beverage industry in 2018 and was primarily engaged in investing and charitable work when an opportunity came along to broker the purchase of petroleum from a Russian company for a buyer in Ghana. The Russian seller required a DLC to secure the transaction so HJT reached out to Landes in November 2018. Thomas attests he informed Landes he needed a DLC from a top tier bank no later than November 14, 2018. Landes represented it had substantial experience in such transactions and further represented it could obtain the necessary DLC in the time frame requested.

Landes required as payment for obtaining the DLC 7% of the $7,000,000 underlying transaction amount with 2% to be held in escrow until the DLC was delivered. HJT deposited the 2% which amounted to $140,000, in the escrow account.

Thomas attests that the parties agreed that full payment of the commission would be made upon the acceptance of a compliant DLC by the seller. According to HJT, Landes failed to timely acquire a suitable DLC from a top tier bank. The DLC ultimately obtained by Landes was rejected by the Russian seller as being "unprofessional," was a "cut and paste job" and was untraceable by the Russian seller's fiduciary. HJT lost a $75,000 deposit, as well as a loss of reputation as a result.

HJT moves for dismissal of Landes's claims because Landes never provided complete written responses or objections to HJT's Fed. R. Civ. P. 34 document request and never served its own discovery on HJT. It never produced a signed, executed copy of the Agreement for Financial Services on which it bases its Breach of Contract claim and further

failed to produce any evidence, including any email or fax, that the Agreement was ever provided HJT. Landes failed to produce any third party correspondence or evidence that it attempted to obtain, or did in fact obtain, a compliant DLC. Landes's purported written Agreement contains typographical errors and appears to have been created after the fact.

HJT also contends Landes's Unjust Enrichment /Quantum Meruit claim fails because Landes expressly contends it entered into a contract with HJT and Ohio law bars recovery under an unjust enrichment theory when there exists a contract that governs the parties interactions. Moreover, far from benefitting from Landes's efforts, HJT lost money and its reputation due to Landes's failure to provide a suitable DLC. Landes has not produced any discovery showing its efforts in trying to obtain a DLC. It has produced no cost analysis and no time sheets showing hours worked on the project. In short, Landes offers no evidence on which to base its purported losses. Moreover, the SWIFT documents lack any indicia of legitimacy.

Finally, HJT moves to dismiss Landes's Fraud claim as it fails to allege with the requisite specificity what misrepresentations, if any, were made.

Landes responds that HJT admits the parties had a contractual agreement for Landes to secure a DLC in the amount of $7,000,000 in exchange for a commission of 7%. This is evidenced by the undisputed fact that HJT paid $140,000 into an escrow account per the terms of the Agreement. HJT has also counterclaimed for Breach of Contract, further evidencing the parties had entered into an agreement. As further evidence, Landes offers the declaration of Justin D. Smith, owner of Landes, who declares that on November 6, 2018, Landes and HJT entered into a written agreement wherein Landes would secure a DLC in the

amount of seven million dollars and, in return, HJT would pay $140,000 initially and upon delivery of the DLC, HJT would pay the remaining balance of $350,000. According to Smith, Landes performed all its obligations under the terms of the Agreement and delivered a DLC in the amount of $7,000,000. In fact, Landes delivered two conforming DLC's. Although these were subsequently rejected by the seller, this does not alter the fact that Landes performed its obligations fully. Furthermore, HJT incorrectly states the parties agreement required the DLC be issued from a top tier bank, but HJT refused or was unable to pay for such a DLC. Moreover, HJT approved the DLC that was delivered to the Russian petroleum refinery. The second DLC was not rejected due to any flaw in the DLC itself; rather, it was rejected by the bank because the bank did not engage in the petroleum business. Thus, Landes is entitled to payment under the terms of the parties' contract.

      Landes further argues that HJT is not entitled to summary judgment on its Quantum Meruit/ Unjust Enrichment claim. While HJT is correct that a party cannot prevail on such a claim when there exists a contract that governs the transaction, it is HJT that is disputing whether a contract existed. Under these circumstances, Ohio law permits alternative pleading and Landes may pursue its claim.

      Landes also maintains its Fraud claim must survive summary judgment because it can satisfy the elements of a Fraud and/or Fraudulent Inducement claim by showing HJT made material misrepresentations to induce Landes to acquire a DLC.

      Lastly, Landes contends it has not failed to provide discovery in response to HJT's discovery requests. Landes produced responsive documents to HJT's discovery requests, but HJT never filed any motion complaining of the lack of responsive documents at any time this

litigation. HJT failed to file a Motion to Compel and failed to timely object to any lack of production. Consequently, HJT is not entitled to dismissal for any failure of Landes to prosecute.

## LAW AND ANALYSIS

### Standard of Review

Summary judgment shall be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). The burden is on the moving party to conclusively show no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lansing Dairy. Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). The moving party must either point to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, interrogatory answers, or other materials" or show "that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *See* Fed. R. Civ. P. 56(c)(1)(A), (B). A court considering a motion for summary judgment must view the facts and all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the movant presents evidence to meet its burden, the nonmoving party may not rest on its pleadings, but must come forward with some significant probative evidence to support its claim. *Celotex*, 477 U.S. at 324; *Lansing Dairy*, 39 F.3d at 1347.

This Court does not have the responsibility to search the record *sua sponte* for genuine

issues of material fact. *Betkerur v. Aultman Hospital Ass 'n.*, 78 F.3d 1079, 1087 (6th Cir. 1996); *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404-06 (6th Cir. 1992). The burden falls upon the nonmoving party to "designate specific facts or evidence in dispute," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986); and if the nonmoving party fails to make the necessary showing on an element upon which it has the burden of proof, the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 323. Whether summary judgment is appropriate depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Amway Distributors Benefits Ass 'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251-52).

**Choice of Law**

"...[I]f the district court's jurisdiction is premised on diversity of citizenship, as it is here, the choice of law rules of the forum state apply. *Tocci v. Antioch Univ.*, 967 F. Supp. 2d 1176, 1191 (S.D. Ohio 2013), citing *Klaxon Co. v. Stentor Elec. Mfg.* Co., 313 U.S. 487, 498, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Uhl v. Komatsu Forklift Co., Ltd.,* 512 F.3d 294, 302 (6th Cir.2008). Here, there is diversity of parties as Landes's principal place of business is within the Northern District of Ohio while HJT is a Georgia-based corporation, though the Complaint alleges HJT does significant business in the Northern District of Ohio.

There is no serious dispute by the parties that Ohio law applies. Both sides rely on Ohio law in their briefs on summary judgment. The declaration of Jerome Thomas, principal owner of HJT, attests he reached out to Landes to obtain the DLC. (Thomas Decl. ¶ 6-7). The Agreement for Financial Services provided by Landes does not contain a choice of law

provision, however, an Escrow Agreement signed by representatives of both Landes and HJT and provided by HJT as an attachment to its Reply, contains a choice of law clause naming Ohio law as the governing body of law to be applied to the Escrow Agreement. Landes, an Ohio, company alleges its injury occurred in Ohio. Thus, the Court finds Ohio has the strongest contacts and therefore, application of Ohio law is appropriate.

**Breach of Contract**

Under Ohio law, to prevail on a breach of contract claim, a plaintiff must prove: (1) the existence of a binding contract; (2) that the nonbreaching party performed its contractual obligations; (3) the other party failed to fulfill its contractual obligations without legal excuse; and (4) the nonbreaching party suffered damages as a result of the breach. *Baghani v. Charter One Bank F.S.B.,* No. 91373, 2009 WL 280399, ¶ 13 (Ohio Ct.App. Feb. 5, 2009). "A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration, ... a manifestation of mutual assent and legality of object and of consideration." *Artisan Mech., Inc. v. Beiser,* No. CA2010–02–039, 2010 WL 4514275, at *4 (Ohio Ct.App. Nov. 8, 2010). "A meeting of the minds as to the essential terms of the contract is a requirement to enforcing the contract." *Kostelnik v. Helper,* 96 Ohio St.3d 1, 3-4, 770 N.E.2d 58 (2002) citing *Episcopal Retirement Homes, Inc. v. Ohio Dept. of Indus. Relations* (1991), 61 Ohio St.3d 366, 369, 575 N.E.2d 134. "Thus, to declare the existence of a contract, the parties must consent to its terms, there must be a meeting of the minds of the parties, and the contract must be definite and certain." *Id.* "In order to prove the existence of a written contract, the essential elements of the contract must be part of a writing, or part of multiple

writings that are part of the same contractual transaction." *Juhasz v. Costanzo* (2001), 144 Ohio App.3d 756, 762, 761 N.E.2d 679.  "Terms of an oral contract may be determined from "words, deeds, acts, and silence of the parties." *Kostelnik*, 96 Ohio St.3d 3.

According to its Complaint, Plaintiff alleges "[o]n or about November 6, 2018, the parties entered into a written agreement in Cuyahoga County, Ohio whereby the Defendant engaged the Plaintiff to secure and cause the issuance of a Documentary Letter of Credit ("DLC") for Seven Million Dollars ($7,000,000.00)." (Complaint ¶ 10).  "Defendant has materially and substantially breached the verbal agreements, implied agreements, express agreements, written agreements, quasi-contract, promissory estoppel, and/or any other agreement of the parties as set forth herein." (*Id* at 26).   Thus, while Landes asserts the Agreement for Financial Services attached to its Complaint accurately embodies the agreement between the parties, it has pled both a written and/or oral contract.  However, the Agreement Plaintiff purports to have been entered into by parties was never signed. Defendant contends the Agreement attached to Plaintiff's case was never provided to Defendant and was never agreed to by Defendant.

"Though parties ordinarily manifest their assent to a written contract by signing it, a party may manifest its assent by some other act or conduct." *Bruzzese v. Chesapeake Expl., LLC*, 998 F. Supp. 2d 663, 674–75 (S.D. Ohio 2014) citing *Restatement of Contracts* 2d § 19(1). ("The manifestation of assent may be made wholly or partly by written or spoken words or by other acts or by failure to act.")  A signature is not required unless the parties agree that their written agreement be signed. *Tocci v. Antioch Univ.*, 967 F.Supp.2d 1176, 1200–01, 2013 WL 4517838, at *20 (S.D.Ohio 2013).  Indeed, the Sixth Circuit interpreting

Ohio law has been clear that manifestation of mutual assent requires that each party make a promise or begin to render performance. *Stonebridge Operating Co., LLC v. Antero Res. Corp.,* 510 F. Supp. 3d 567, 577 (S.D. Ohio 2020). "A party's conduct demonstrates assent when 'he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents.'" *Bruzzese,* 998 F. Supp. 2d at 675 quoting *Restatement of Contracts* 2d § 19(2); see also *Tocci.* 967 F.Supp.2d at 1200–01.

  The parties do not dispute there was a contract between them and the evidence strongly supports the same. Both parties took affirmative actions in furtherance of their agreement, with HJT depositing $140,000 in an escrow account and Landes securing two DLC's. The discrepencies concern the type of DLC and the type of bank from which it was to be obtained and the time frame it was to be delivered. Jerome Thomas's declaration asserts he never signed a formal agreement with Landes but "understood" that the commission of 7% would be owed Landes upon the acceptance of the DLC by the seller of the petroleum. (Thomas decl ¶8-9). He further declares that the parties' understanding included that the DLC would be from a "top-tier bank" and that it would be delivered by November 14, 2018. (*Id*. ¶ 7-9). Thomas asserts Landes failed to do both, costing HJT $75,000 in addition to th amount still being held in escrow.

  Justin Smith, owner of Landes, submits his own declaration asserting that on November 6, 2018, Landes and HJT entered into a written agreement wherein Landes would deliver via SWIFT a DLC and HJT would escrow 2% of the 7% commission to be paid. Though HJT denies any written agreement, HJT did escrow the 2% initial payment per the terms of the Agreement. (Smith ¶ 6-9). Smith further attests Landes delivered a DLC per the

terms of the written Agreement  (*Id* ¶ 11) and HJT approved the DLC prior to delivery.  (*Id* ¶ 19).  He further asserts the parties never agreed that payment was conditioned upon the acceptance of the DLC by the seller.  (Id ¶ 26-27).

Based on the affirmative acts of the parties and the acknowledgment by both sides that there was a contract, the Court finds disputed issues of fact preclude summary judgment for HJT.  While the written agreement submitted by Landes is unsigned and disavowed by Thomas, the parties did have a signed escrow agreement which contains the following language, " Parties (Landes and HJT) wish to enter this Agreement (the Escrow Agreement) in order to facilitate the consummation of the transactions contemplated and agreed to in Agreement .....to provide DLC..." (Escrow Agreement ECF 17-1).  Furthermore, the written Agreement for Financial Services does not contain any language that it only becomes operative when signed and Ohio law does not require that a written agreement be signed to be enforceable.  See *Dorgham v. Woods Cove III,* 2018-Ohio-4876, ¶ 15. (" At the outset, we agree with Woods Cove that a written contract containing an arbitration agreement does not need to be signed to be enforceable."), See also  *PNC Mtge. v. Guenther,* 2d Dist. Montgomery No. 25385, 2013-Ohio-3044, ¶ 15 (signed writing is not necessary to a settlement contract); *Seyfried v. O'Brien,* 2017-Ohio-286, 81 N.E.3d 961, ¶ 19, fn. 3 (8th Dist.) (lack of a signature does not in itself show that the party has not consented to arbitration).  As such, it is for a trier of fact to determine what the disputed terms of the contract were, whether it was an oral agreement, or whether the terms are embodied in the Agreement for Financial Services.  "The terms of an oral contract must be established by oral testimony and their determination is a question for the trier of fact."  *Willoughby Supply Co.*

*v. Inghram,* 2015-Ohio-952, ¶ 11, 30 N.E.3d 230, 233.

**<u>Unjust Enrichment</u>**

"To prevail on a claim for unjust enrichment, a plaintiff must prove by a preponderance of the evidence that: (1) the plaintiff conferred a benefit upon the defendant, (2) the defendant had knowledge of such benefit and (3) the defendant retained that benefit under circumstances in which it would be unjust for him or her to retain that benefit." *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984).

"Under Ohio law, the existence of a valid, enforceable contract covering the subject of a dispute generally precludes a claim for unjust enrichment." *Cleveland Cent. Cath. High Sch. v. Mills,* 2018-Ohio-4873, ¶¶ 42-44, 125 N.E.3d 328, 340 citing *Tanglewood Shopping Ctr., L.L.C. v. Riser Foods Co.*, 8th Dist. Cuyahoga No. 105364, 2018-Ohio-1183, 2018 WL 1567658, ¶ 33 ("Unjust enrichment is an equitable remedy and, therefore, is unavailable where parties have entered into an express contract concerning the same subject matter, absent fraud or illegality.")

While Landes is correct that it may plead Unjust Enrichment in the alternative, on summary judgment it must establish by competent evidence genuine issues of fact on its claim to survive. But here, the parties do not dispute the existence of a contract as both have alleged Breach of Contract claims.[1] Both parties have submitted evidence in the form of declarations of their principals that a contract existed and both engaged in affirmative acts in furtherance of a contract. Both agree that HJT was to pay a total of $490,000 in exchange for

---

[1] Though HJT has counterclaimed for Breach of Contract it did not move for summary judgment on its counterclaim.

the services of Landes in obtaining a DLC. In light of the existence of a contract between the parties, Ohio law precludes a claim for Unjust Enrichment on damages that are the subject of the contract at issue. Therefore, the Court grants summary judgment for HJT on Plaintiff's Unjust Enrichment claim

**Fraud**

Landes's Complaint alleges "The Defendant fraudulently induced and/or made fraudulent misrepresentations and promises to the Plaintiff for the purpose of illegally, improperly, maliciously, fraudulently or otherwise securing the DLC." (Complaint ¶ 34). However, Plaintiff's Complaint fails to identify with any specificity what statements by HJT were fraudulent or what conduct by HJT fraudulently induced Landes to engage in the transactions at issue. HJT moves for judgment on the claim because Landes has failed to plead with any specificity any fraudulent statement made by HJT.

"A claim for common-law fraud requires proof of the following elements: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance." *Sutton Funding, L.L.C. v. Herres,* 2010-Ohio-3645, ¶¶ 49-50, 188 Ohio App. 3d 686, 697, 936 N.E.2d 574, 582 citing *Cohen v. Lamko, Inc.* (1984), 10 Ohio St.3d 167, 169, 10 OBR 500, 462 N.E.2d 407; *See also Collins v. Natl. City Bank,* Montgomery App. No. 19884, 2003-Ohio-6893, 2003 WL 22971874, ¶ 39. "Failure to specifically plead the

13

operative facts constituting an alleged fraud presents a defective claim that may be dismissed." *Universal Coach, Inc. v. New York Transit Auth., Inc.* (1993), 90 Ohio App.3d 284[, 629 N.E.2d 28]. "In complying with Rule 9(b), a plaintiff, at a minimum, must "allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.,* 501 F.3d 493, 504 (6th Cir. 2007) quoting *Coffey v. Foamex L.P.,* 2 F.3d 157, 161–62 (6th Cir.1993).

The Court agrees the Complaint lacks the requisite specificity regarding any fraudulent statement of HJT. In fact, it fails to identify any false statement and lacks the requisite who, what, where and when sufficient to satisfy Ohios' or the Federal Rules' pleading requirement under Rule 9. Moreover, Landes has failed to offer any evidence supporting its Fraud claim. The only evidence it offers, the declaration of Smith, describes no fraudulent statement or representation by HJT that Landes relied on to its detriment.

Therefore, HJT is entitled to summary judgment on Landes's Fraud claim.

Lastly, HJT asks the Court to dismiss Plaintiff's Complaint for failure to prosecute. HJT alleges Landes failed to fully respond to propounded discovery and failed to conduct any discovery of its own. The Court denies HJT's Motion due to Landes's failure to prosecute because HJT failed to timely raise the issue during or after the close of discovery. HJT never motioned the Court to compel production and did not ask the Court to exclude any evidence that Landes failed to produce in discovery. The dismissal of "a claim for failure to prosecute is a harsh sanction which the court should order only in extreme situations showing a clear record of contumacious conduct by the plaintiff. " *Wu v. T.W. Wang, Inc.,* 420 F.3d 641, 643

(6th Cir. 2005). Because the record does not establish that Landes's conduct in discovery warrants such a harsh sanction and because the Sixth Circuit has routinely stated its preference that cases be determined on the merits, the Court denies HJT's motion for dismissal due to Landes's failure to prosecute.

Therefore, for the foregoing reasons, the Court denies summary judgment for HJT on Landes's Breach of Contract claim and grants summary judgment for HJT on Landes's Unjust Enrichment/Quantum Meruit and Fraud claims. The Court denies HJT's motion to dismiss for failure to prosecute.

IT IS SO ORDERED.

/s/Christopher A. Boyko
CHRISTOPHER A. BOYKO
Senior United States District Judge